8 U.S. 137
 4 Cranch 137
 2 L.Ed. 574
 SKILLERN'S EXECUTORS
v.
MAY'S EXECUTORS.
 February Term, 1807
 
 1
 ERROR to the district court of the United States for the district of Kentucky, in chancery.
 
 
 2
 The facts of the case, as they appear upon the record, are as follow:
 
 
 3
 Skillern put into the hands of Richard May several land-warrants to locate in Kentucky, under an agreement that May should have half the land for locating the whole, who accordingly located the quantity of 2,500 acres in the name of Skillern, but not to his satisfaction, and the matter was not settled between them as the time of R. May's death, when his interest in the lands so located descended to his son, John May, the defendants' testator. Skillern afterwards came to an agreement with John May, on the 6th of March, 1785, by which Skillern was to assign to J. May one military warrant for 200 acres of land, and all the treasury warrants located in the name of Skillern, with the entries and locations made thereon, which assignment was on the same day executed, but never lodged in the land-office, or the office of the surveyor of the county where the lands were situated. In consideration of this assignment, and in full of all demands by Skillern against the representatives of R. May's estate, John May gave to Skillern a bond, dated March 6th, 1785, to convey to Skillern 1,000 acres of the land to which R. May was entitled at his death, and which remained unsurveyed, to be chosen by Skillern before the 15th of June, 1786. It was also agreed by another writing of the same date, that if Skillern would give up the bond for 1,000 acres, John May should convey to him 1,100 acres of other land described in the writing, and Skillern was to make his election of the one or the other before the 1st of October, 1786. This last agreement was afterwards cancelled, and a bond in lieu thereof given by J. May to Skillern, dated October the 9th, 1787, to convey to the latter, on or before the 1st of December, 1788, 'eleven hundred acres of first rate elk-horn land, well watered, and lying within ten miles of Lexington.'
 
 
 4
 Skillern, notwithstanding the assignment of his military and treasury warrants to J. May, afterwards obtained patents thereon for 1,050 acres, of the value of 4,416 dollars 66 cents.
 
 
 5
 There was no evidence that Skillern ever offered to convey those lands to May, or his representatives.
 
 
 6
 The bond of 6th of March, 1785, and that of the 9th of October, 1787, were both fraudulently placed by Skillern in the hands of his agent, for the purpose of enforcing payment of both. The agent, supposing both bonds to be due, entered into an agreement with J. May's executors, the present defendants, for the discharge of the bond of 6th of March, 1785, and the same was given up by Skillern's agent to the defendants, with a receipt thereon. But the agent finding afterwards that the bond of 6th of March, 1785, was vacated by that of the 9th of October, 1787, refused to carry that agreement into effect, but brought an action of covenant upon the condition of the last mentioned bond, and recovered damages to the amount of 8,433 dollars and 33 cents.
 
 
 7
 John May devised his lands to his executors for the payment of his debts, and this bill was brought by Skillern, in his life-time, to subject the same to the payment of the judgment recovered at law. Pending this suit in chancery, Skillern died, leaving infant heirs, and the suit was revived in the name of his executors. Sixty acres, part of the 1,050 acres, had been sold for the payment of the state tax due from Skillern, and the two tracts of 300, and 250 acres, had been sold for the direct tax due to the United States, but were redeemed by the purchaser of the 60 acres.
 
 
 8
 After the filing of this bill, and after the death of Skillern, John May's executors filed a cross bill against Skillern's executors, and it was agreed that both suits should be tried at the same time.
 
 
 9
 The court below decreed a perpetual injunction as to 4,416 dollars 66 cents, part of the judgment at law, the same being the value of the 1,050 acres patented in the name of Skillern, and decreed payment of the residue out of the real estate of John May, unless it should be otherwise paid, by a day named in the decree.
 
 
 10
 Both parties sued out their writ of error.
 
 
 11
 H. Clay, for Skillern's executors.
 
 
 12
 C. Lee, for May's executors.
 
 
 13
 It was contended, in behalf of May's executors,
 
 
 14
 1st. That inasmuch as both bonds, viz. that for 1,000 acres, and that for 1,100 acres, were given for one and the same consideration, a discharge of either was, in equity, a discharge of both; and that having discharged the first bond by a new engagement, the executors of Skillern could not, in equity, claim satisfaction of either.
 
 
 15
 2dly. That Skillern having taken to his own use part of the land which he had agreed to assign to May as a consideration of the bonds, could not enforce them in equity.
 
 
 16
 3dly. That as Skillern had suffered a part of the lands to be lost, by not paying the taxes, he had thereby made himself chargeable for the lands, and had in fact received a full equivalent for the consideration of the bonds; and therefore there ought to have been a decree for a perpetual injunction as to the whole amount of the judgment at law; especially as the fact of fraud on the part of Skillern is expressly found by the jury. The half of 2,500 acres was all he was entitled to, if his conduct had been fair. But as it has been found otherwise by a jury, a court of chancery ought not to have given its aid to enforce any part of the judgment at law.
 
 
 17
 For Skillern's executors it was said, that it was not in the power of Skillern alone to put an end to the contract. That by surveying and patenting the lands, he had saved them from forfeiture for not surveying within the time limited by law. That although the lands had been sold for taxes, yet the redemption enured to the benefit of the right owner.
 
 
 18
 The jury found the value of the 1,050 acres of land, but not the value of the title. The land may be worth fifteen dollars an acre, but the title may be worth nothing.
 
 
 19
 The patents had issued by mistake in the name of Skillern, and that mistake was owing to May's not having filed the assignment in the proper office. Skillern's executors are ready and willing to transfer those titles to the defendants.
 
 
 20
 THIS COURT gave no other opinion in this case than is expressed in the following decree.
 
 
 21
 'It is the opinion of the court that G. Skillern, by acquiring to himself the legal estate to 1,050 acres of land, the equitable right to which he had transferred to John May on the 6th of March, 1785, (and having never conveyed or offered to convey the said lands to May or to his legal representatives,) and it appearing that at the time of the decrees rendered in these causes, certain parts of the said entries to which Skillern had thus acquired the legal title, and which constituted a part of the consideration of the bond on which the judgment at law was entered, had been lost in consequence of the neglect of Skillern to pay the taxes due thereon, the complainants below in the original suit were not entitled to the aid of a court of equity to enforce the execution of the obligation of the 9th of October, 1787, or to obtain satisfaction of the judgment at law founded thereon.
 
 
 22
 'It is therefore decreed and ordered, that the decree of the district court rendered in the original cause be reversed and annulled with costs; and this court doth remand the same to the said district court for further proceedings to be had therein, in order that an equal and just partition of the 2,500 acres of land mentioned in the said assignment of the 6th of March, 1785, be made between the legal representatives of the said George Skillern and the said John May.
 
 
 23
 'And as to so much of the decree in the cross-suit as enjoins 4,416 dollars 66 cents, part of the judgment at law, this court doth affirm the same, and as to the residue of the said decree, it is decreed and ordered, that the same be reversed and annulled, with costs; and this court, proceeding to give such decree in the said cross-suit as the said district court ought to have given, it is further decreed and ordered, that the judgment at common law mentioned in the said bill be perpetually enjoined.'