BUFORD, Administrator, *vs.* BYRD.

1. The Circuit Court may, in its discretion, permit the plaintiff to withdraw his replications, and demur to the pleas of defendant, even at the term following that at which the replications are filed.

2. The seventh section of the fifth article of the act relating to "Justices' Courts," (Rev. Stat., 1835, p. 359,) allowing the obligor of a bond to impeach the consideration thereof, applies only to causes originating before a justice of the peace. In suits on bonds originating in the Circuit Court, a partial, or even total, failure of consideration cannot be pleaded in bar of the action.

APPEAL from the Circuit Court of Washington county.

Scott *and* Zeigler, *for Appellant.*

1. Did not the court err in permitting Byrd, after the issues were made up, and after the lapse of a term, to withdraw his replication, and file a demurrer to the pleas?

2. Did not the court err in sustaining the demurrer to the pleas of total failure of consideration?

P. Cole, *Attorney, for Appellee.*

1. The court gave judgment for the wrong party.

2. The court erred in permitting the plaintiff to withdraw his replication, and file a demurrer.

3. That the court sustained the plaintiff's demurrer, &c.

And the simple point relied upon by the appellee is, that the court did what it should have done in each and every of these particulars.

Tompkins, *Judge, delivered the opinion of the Court.*

Thomas Byrd, assignee of John E. Cowan, brought an action of debt against James Buford, administrator of William Buford, on a single bill obligatory, made by the intestate in his lifetime; and Byrd having obtained a judgment in the Washington Circuit Court, Buford appeals to this Court.

Buford pleaded two pleas, which are in substance the same, to wit:— That the writing sued on was given for land; and that the vendor, Cowen, to whom the said writing had been made, and by whom it had been assigned to the plaintiff, Byrd, had no title to the land, and alleging fraud. The plaintiff replied, denying the truth of the matter pleaded, and the cause was continued. At the next term of the Circuit Court, the plaintiff asked and obtained leave to withdraw his replications to the two pleas, and then demurred to each of the pleas. The Circuit Court sustained the demurrers to those pleas, and gave judgment for the plaintiff, Byrd.

It is contended for the appellant, Buford, that the Circuit Court committed error in permitting Byrd, after the issues were made up, and after the lapse of a term, to withdraw his replications, and file demurrers to the pleas; and also that it erred in sustaining the demurrers to the pleas of a total failure of consideration.

The plaintiff's counsel relies on this provision in the statute, to wit:—The first and second sections of the sixth article of the act to regulate the practice at law, which provide that the court in which the action is pending may amend any pleading, &c., for the furtherance of justice, provided the adverse party be allowed an opportunity, according to the course and practice of the court, to answer the pleading so amended. (Digest of 1835, p. 467.) If those pleas tendered immaterial issues, the court committed no error in permitting the appellee, Byrd, to amend his pleading, by withdrawing the replications and filing demurrers; for the defendant, appellant here, could have gained nothing by getting a verdict on such issues.

The inquiry, then, will be, whether the demurrers were rightly sustained. The counsel for the appellant contend, that the demurrers were wrongfully sustained; for, say they, " although at common law one could not inquire into the consideration of a sealed instrument, or perhaps show that it had wholly failed, yet our statute (see Revised Code, p. 359, 60, sec. 7,) has expressly subjected to this defence all actions founded on bonds or notes.

" This provision of our statute is general, and relates to all suits upon contracts before any justice of the peace or any Circuit Court, by appeal or otherwise, and gives the justice or the court the power to inquire into the consideration, or impeach the validity of the bond or note, and must have been overlooked by the court, in deciding the case of Burrows *vs.* Atchison, 7 Mo. Rep., 424."

The law referred to is the seventh section of the fifth article of the act to establish justice's courts, Digest of 1835, p. 359, and it reads thus:—" On the trial of all suits upon contracts, before justices of the peace, or in any Circuit Court, by appeal or otherwise, whether brought by the original claimant, or any person for his use, or by the payee or obligee of any bond or note, it shall be the duty of the said justice or court to hear and determine such cause on its merits, and to hear parol or other legal evidence to impeach the validity or consideration of any bond or note; and if it shall be ascertained by the justice, or court, or verdict of the jury, (if one be required,) that the consideration of such bond or note has failed in whole or in part, judgment shall be given according to the finding of the justice, or court, or verdict of the jury, notwithstanding the defendant may hold a warranty or other instrument in writing on the payee or obligee of said bond or note, purporting to be an agreement to make good the consideration of said bond or note if the same should fail."

Without going at all into the history of this provision of the law, it will suffice to say, that it is intended as an improvement on the act of 16th January, 1831, entitled, "An act supplementary to an act establishing justices' courts, and regulating proceedings in the collection of small debts." Long before the passage of this act of 1831, an act had been passed to authorize either the plaintiff or defendant, before justices of the peace, to examine each other, and the Circuit

Courts, without any provision to that purpose, allowed the same testimony on an appeal, lest a party who had gained a suit before the justice, on the evidence of his adversary, should lose it in the Circuit Court, on appeal, through defect of that evidence. And we find in this section above recited, from the Digest of 1835, that when an appeal from the justice's court has been taken in such a case, the same kind of testimony may be given in the Circuit Court by express statutory provisions. There can be little doubt that the act was first passed to meet cases of the character of Davis *vs.* Cleaveland, 4 Mo. Rep., 206.

The counsel is quite mistaken in supposing that this Court, in deciding the case of Burrows *vs.* Alter, (7 Mo. Rep., 424,) overlooked this law. It would be quite strange, indeed, if the legislature were, in passing an act to regulate proceedings before justices of the peace, thus indirectly to make rules to govern the proceedings of the courts of record. The most careless perusal of the section relied on is sufficient to satisfy an unbiassed mind, that this law is intended to be applied to causes of action originating before a justice of the peace, and brought 'into the Circuit Court "by appeal or otherwise." It might come into the Circuit Court by mandamus. That court has a general superintending control over justices of the peace.— Section 8 of the 5th article of the Constitution. "But," he continues, "to limit the operation of the statute to suits commenced before a justice of the peace, would be, to make a different rule of evidence according to the court in which the suit was commenced. The justice and the Circuit Court have concurrent jurisdiction in suits on bonds or notes for the amount of $150, (which is the amount of the note sued on,) and had Byrd sued Buford before a justice of the peace, he might have made this defence, but cannot as suit is here brought in the Circuit Court. There must be some limit to the jurisdiction of a justice of the peace, and at that limit the jurisdiction of the Circuit Court becomes exclusive. The legislature have, as I have shown, at different times, thought fit to establish a rule for the government of the justices' courts, different from the common law rules which govern the Circuit Courts; and if occasionally a case occur, like this, where the plaintiff can have an advantage over the defendant in the choice of the court in which he has commenced his suit, this court is not, therefore, to change that rule of proceeding prescribed by the law-giver. It is most plain that the legislature made this statutory provision under the impression that such defence could not be made at common law, and that relief, in such cases, could be obtained in a court of equity only. The decisions of this Court, viz., Ewing *vs.* Miller, (1 Mo. Rep., 234,) and Montgomery *vs.* Tepton, (1 Mo. Rep., 466,) are cited to show that a total failure of consideration is a good defence at law to an action on a single bill obligatory. In the first of those cases, Judge McGirk, delivering the opinion of the court, says, that Miller, the defendant, pleaded that the consideration given him was fraudulent. Without giving any authority, he then adds— "This is a plain case; fraud is pleadable at law," &c.

In the other case, Judge Pettibone states the plea to have been, "that the writing obligatory, in the declaration mentioned, was obtained from the defendant by fraud, covin, and misrepresentation;" and then adds—"The court are of opinion that this plea is good. Fraud constitutes a good defence in law, the same

as in equity; and the general allegation of fraud, without specifying the particulars, is sufficient;" and cites, 1 Chitty's Plead., 553.

In a second plea the defendant sets out the particulars of the fraud, and shows a partial failure only of the consideration. Then the judge adds:—"This plea is clearly bad. The specification of fraud here set out does not constitute a bar to the note. The fraud is not in obtaining the note, but in misrepresenting the quality of a part of the consideration of the note: for this fraud, he must resort to his cross action."

It is evident, from this last opinion, that the court then thought that fraud in obtaining the note would have been a good plea, and therefore it was said that the general plea was good, because the particular fraud in obtaining the note might have been proved. But however decidedly the opinion of this court might have been expressed in Ewing *vs.* Miller, that a total failure of consideration would be a good plea in bar, yet it is not so apparent, from the case of Montgomery *vs.* Tepton, that they there intended to express the same opinion as in the former case. It is the opinion of this Court now, as it was in the case of Montgomery and Tepton, that the general plea, fraud, is good, if the proof given under such plea be confined to fraud used in obtaining the instrument of writing. Powell on Contracts, says:—"On account of the deliberation in making deeds, they are conclusive upon the party making them: consequently, if I, by deed, bond, or covenant, bind myself to give you twenty pounds to make your hall *de novo*, here you shall have an action upon this deed, bond, or covenant, and the consideration, or cause for it, is not material; for there is a sufficient consideration apparent, namely, the deliberate will of the party who made the deed." Plowden is cited. Bacon is equally positive: see 5 Ba., 155, title, "Obligations." So that, even if there be a total failure of consideration, the defendant must, at law, resort to his cross action; for the consideration cannot be inquired into at law. To the same purpose, see Burrows et al. *vs.* Alter et al., 7 Mo. Rep., 424.

But fraud is cognizable at law as well as in equity, says the appellant's counsel, citing 10 Johnson, 461, where it is decided, that a subsequent purchaser of land, with notice of a prior unregistered deed, will, in a court of law as well as in a court of equity, be considered as informed of the prior sale. But, because a court of law will in some cases take cognizance of matters of fraud, it does not follow that it will do so in all cases. The appellant trusted to his own judgment for the goodness of the title to the land, and the obligee trusted to the solvency of the obligor. Any one may see how readily defects in titles to land, purchased some years past, can be imagined, when the day of payment falls on such days as we now have; defects which frequently would never have been thought of, if the land had been rising in value. Before a court of equity would interfere, it might require some better assurance of fraud than a string of pleas as easily spun as a spider's web.

Another authority of the appellant is, 4 Cranch, 137, where it is decided, that a court of equity will not lend its aid to carry into effect a judgment obtained in a bond where the consideration has failed. It does not appear that the appellee in this case wants the aid of a court of equity; so that authority will pass for nothing.

But it is urged that our legislature has done much *to break down* the distinction betwixt bonds and notes. Is it, then, the duty of the courts to do that which the legislature have not thought proper to do? They have the legitimate right to destroy the barrier whenever they wish to do so. For more than thirty years this argument has been urged upon the courts by men of great influence and abilities, whenever they happen to have cases requiring the abolition of that distinction; and time after time persons have been in the legislative body, where they either failed or neglected to do what this Court is urged to, and what it cannot do without usurpation of power. Amongst this class of persons, the present learned counsel is not without distinction : a member of the first legislative body in the territory, as long as he would accept the place, with an influence to do any thing useful, he did not abolish, or cause to be abolished, this distinction betwixt writings sealed and unsealed. For what reason? Because he did not think it profitable to the community. And shall this Court be requested to assume legislative power, and do what the legislature have not thought fit to do?

The pleas are bad, because the writing obligatory sued on imports a consideration in itself; the Circuit Court, therefore, committed no error in permitting the plaintiff to withdraw his replications to those pleas, and to file demurrers.

The judgment must be affirmed.